Number 162186, United States v. Edwin G. Perez-Couvertier Good morning, Your Honor. My name is Julia Height. I am representing Mr. Perez on this appeal. Your Honor, if I could ask for two minutes' rebuttal. Certainly. Discretionary rebuttal. If I'm going good on this ten minutes, then I'll waive it. Eight minutes. Okay. Thank you, Your Honor. This is a case that involves a speedy trial issue under Barco v. Wingo. There was a conceded delay here in this case between indictment and arrest of nearly five years. And this is a case that involved over 70 defendants and as far as we know, not one of these defendants have raised a speedy trial claim. After the indictment of Mr. Perez, the government did not forget about this case, nor did it slip through the cracks. What the government did during these five years was gather guilty pleas, cooperation agreements, and other things related to this particular case, yet they made no effort whatsoever to arrest Mr. Perez, who was in plain sight. He was in plain sight because he was living in New York. He was working for five years. He had abandoned his whole life of criminality in favor of taking care of his family, and especially his very disabled son who suffered from Dandy Walker's disease and cerebral palsy. How do you support the assertion that the government made no attempt to find him? What do you think? Well, that is I think the fact that speaks for itself, because there are no facts to bolster any government claim that would justify this four and a half year delay. I think that we can presume from the facts, which are conceded by the government, in fact, that this guy was not hiding. There was just no reason to arrest. In fact, the government in this court claims, well, maybe we could presume negligence and not deliberate misconduct in failing to arrest Mr. Perez sooner. However, on this record, we can't presume negligence rather than deliberate misconduct. Counsel, excuse me, but there are no facts. There's no record because your client never had a plain error situation. Given the failure to address this issue below, how could... The logic of the argument seems to be that somehow the trial judge, Sue Esponte, should have understood that there's such a clear and obvious error here that the trial judge should have raised the speedy trial issue. I don't know how... You seem to be asking now for an evidentiary hearing, development of a record, all of which could have been done below if there had been a timely... If your client, your client now, had raised the speedy trial issue in a timely way. Well, Your Honor, yes. You're absolutely correct. The speedy trial issue was not raised in the court below. But it was not raised because counsel was totally ineffective in failing to raise this issue. In other words, he was, by not raising this issue, deprived of the effective assistance of counsel. And what we are submitting to this court is that the government, and nor should this court, permit the piggybacking of one violation of a constitutional right to sustain a clear violation of another constitutional right. Now, I know that in various cases before this court, it has generally been held where there is a claim of ineffective assistance of counsel, the best way to address this claim is to permit the defendant to later submit a habeas corpus proceeding. However, the difficulty with this particular argument is the fact that we all know that when a defendant submits a habeas corpus, he's doing it pro se. He doesn't have the assistance of counsel to help him in this regard. He is going against a whole complex of very well-trained government attorneys. Now, I would submit to this court, if this court finds that counsel had no reason, or there is really no explanation for failing to raise this issue or not raising this issue, then this court, and it has been held in other cases that it is not written in stone that this court cannot remand the case back for a hearing to determine all the facts. And we assert that this is precisely the perfect case to do so. And I would ask when the government gets up to argue its case, to present to this court an argument saying, well, what was the downside? What was the strategic reason in not raising this particular case, this particular argument? And I would ask this court to draw its attention to a very recent Second Circuit case of United States v. Panic, which is quoted in my brief, where in that case, there was a mutual conduct between the defense and the prosecution that caused a six-year delay, one year more in this case, and the Second Circuit said it doesn't matter. It is still too long. All the cases presents the burden on the government to explain just why there was a particular delay. Now, the government also asserts, well, what is the prejudice? The defendant can't prove prejudice in this case. And we assert, yes, the prejudice is very real. The prejudice, first of all, is that this is a man who has been leading an upstanding life. He had a steady job. But most important, it's not about the emotional impact upon him, it's the emotional impact upon his severely disabled son who depended upon him for care and taking him to the doctor, lifting him up at eight years of age, et cetera. And that is all facts that are related in the pre-sentence report. Can I ask you one question, counsel, that confused me? There was one point in your brief, in your reply brief, that confused me just a little. In your brief, you say that the anxiety that this defendant, well, he wasn't a defendant at the time, but the anxiety that he must have had over knowing that there was an indictment and that he would potentially be arrested would be great. And then in your reply brief, you say, no, we can't really say he knew about the indictment. Those seem a little inconsistent to me. Which position are you taking, that he knew or didn't know? I'm taking, the position that I'm taking is that there was one sentence from one co-conspirator cooperating witness that stated that she had called him. There was no follow-up, nothing. The government didn't ask the defendant a single question as to his whereabouts these last five years. So my position is, you know, he didn't know. And even if he did know... Start over. Your position is which? That he did not know. And this would bear out with a hearing. And even if he did know? And even if he did know, it's not his responsibility without a lawyer to turn himself in or to do anything. It's the government's responsibility, since they knew where he was or should have known where he was, to apprehend him as they did with other defendants. And one more prong of prejudice is, we know by virtue of the Mueller case, first come, first serve. The government, by the time this defendant was arrested, had all their ducks in order, all the cooperators got great sentences, two years, three years, time served. He got ten years. Judge Lopez? I'm fine. Thanks. Good morning, Your Honors, and may it please the Court, John Taddy for the United States. First, a factual matter on this speedy trial issue I'd like to address. Magdalena, who was one of the individuals who testified at trial, she was a drug point owner, she was the government's first cooperating witness in this case, testified on a trial transcript docket entry 3137 at 71, that two weeks after the indictment in this case came down in June of 2010, and I quote, she said, excuse me, quote, I spoke, well, I'm sorry, she spoke with the defendant over the phone and told him, quote, that he was in the indictment. So at that point, two weeks after the indictment was handed down, the defendant knew that there was a federal criminal charge pending against him related to his drug trafficking activities in the San Martin housing project in Puerto Rico. Counsel, excuse me, but by making that point, aren't you, in effect, inviting us to go into the Barker v. Wingo analysis? Because you're suggesting that he bears responsibility, having been aware of the indictment, for not promptly raising the speedy trial issue. And that's one factor to look at in the Barker analysis. But then, as the opposing counsel pointed out, we have no idea why it took over five years to get to this point. We don't know what the government's responsibility is for this delay. So if you're going to point out what might be the defendant's responsibility, why shouldn't we say, okay, what's the government's explanation for all this? Now, I realize you don't want to supplement the record on the appeal, so it sounds to me like you're saying, well, to get the full picture, maybe we should send this back for an evidentiary hearing. No, Judge Lopez, this court should not do that. And I was going to take a step back after clarifying that factual point. And the reason I did that was because counsel had stated that her client did not know. So I wanted to clarify that point. But as the panel recognized to start out, the plain error of standard of review applies on top of this. The defendant acknowledges that. The defendant had never raised a speedy trial issue before the district court and, therefore, has to prove not only error, but error that was clear or obvious that affected his substantial rights or that affected the fairness or integrity of the judicial proceedings. And he cannot show error in this case, laid below that plain error standard of review here, in which he bears the burden to demonstrate the balancing of those Barker versus Wingo, those four factors, in a clear and obvious way. You have, first, the delay. And the delay, as the government has acknowledged, was about four and a half years from indictment to arrest in this case, which warrants inquiry into the other factors. Then you have the second factor, which is the steps that the government took. And as the court recognizes, there's no record on this because the defendant himself did not raise this objection before the district court. And as a result, this court cannot presume any responsibility on behalf of the government at this juncture on plain error standard of review. Even if this court would assume negligence, there are numerous cases we cite in our brief, Rashad, Look, Doggett, Carpenter, where these cases recognize that negligence is a very minor concern. When it comes to the Barker factors, then you have the third factor, which is, as I was mentioning to start, is the most important factor in terms of this inquiry, which is that the defendant knew that he had been charged in this case, based on the testimony of one of his good friends at trial, unobjected to testimony. And at that point, this court's case law is clear that the defendant bears some responsibility to procure a speedy trial. The defendant himself writes in his brief that he feared being arrested. There would be no greater tonic to absolve that fear than to have approached the authorities and tried to seek timely disposition of this case. At the time, the defendant was living in New York, and there's no evidence to rebut his assertion that he had moved to New York soon after his brother had been killed in February of 2009. But this was a conspiracy that took place entirely in Puerto Rico. There were many defendants involved in this case. We don't know why the government was not able to track down the defendant over the course of the years after the indictment. But again, the reason for that is the defendant failed to raise this objection. And finally, Your Honors, the fourth and final Barker factor is prejudice. And as Chief Judge Howard's questions indicated, the only prejudice the defendant has alleged is anxiety or an emotional impact. He doesn't argue that there were witnesses or any other evidence he could have presented in his case that would have affected the jury's ultimate verdict. And under the plain error standard, he bears that responsibility to prove that there would have been some sort of effect on the verdict in this case. And as we wrote extensively in our brief, the evidence in this case was overwhelming of the defendant's guilt in his participation in this conspiracy. There were three cooperators who testified, all drug point owners like the defendant, who said that the defendant worked his way up from 2006 up until he left in February of 2009, starting out as first a lookout, and then he became someone actually selling the drugs to the point where he was actually within the leadership of this organization. There was a video of the defendant in October of 2008 in which he stood at a drug point talking with other leaders of the organization. There was testimony that the only way he could have been in a meeting like that was if he was a leader of the organization and involved in the organization. There was testimony from government witnesses and from cooperators about the substantial weights and amounts of the drugs that were distributed. Quite frankly, Your Honors, the evidence was overwhelming, so there cannot be any indication that there was a substantial effect on the jury's verdict. Counsel, excuse me. Isn't the logic of your argument that in a situation like this where the speedy trial issue was raised for the first time on appeal, and hence plain error applies, there could never be any indication that there was a substantial effect on the jury's verdict? A successful plain error argument with respect to a speedy trial issue raised for the first time on appeal because, at the very least, given the lack of any factual record, there could be no demonstration of error, or even if there was an error, that it was clear or obvious. I mean, that seems to be the logic of your argument. If you raise a speedy trial issue for the first time on appeal, you're never going to prevail. Isn't that the logic of your argument? No, Your Honor, I don't think so. I don't think the government is prepared to go so far as to say there would never be a situation on plain error review in which a speedy trial claim can't be made, or that there wouldn't be a basis to remand for some sort of factual development. You could imagine a scenario where, I don't know, there was some testimony or something that went overlooked, or there was a case that went overlooked, or there was a case that went overlooked. There is a big discrepancy in the record as to whether or not a certain witness should have testified, or there could be some sort of record. All I'm saying, Your Honor, is on the record here, there is no evidence whatsoever that there was any negligence or bad behavior on the part of the government, that the defendant made any effort to seek a speedy and timely disposition of this case, or that there was a substantial effect, even under a de novo review of the Barker factors. And then laid on top of that, you have the additional plain error standard of review. And counsel mentioned there's no explanation for why trial counsel should have done this. Counsel was ineffective. The explanation could be simple, which is that this is a meritless claim, that there was a long delay in this case, but there wasn't satisfaction of any of the other factors, and therefore, counsel didn't believe that it was meritorious. That is just as plausible as the argument that counsel was ineffective. And one additional thing I'd like to say about ineffectiveness and a remand, and we didn't cite this case in our brief because the remand issue, I don't believe, was raised until the reply brief. There was just a general allegation that counsel had been ineffective. But this case, this Court's decision in Marquez-Perez, 835F3153, says that there need to be clear markers of deficient performance and potential markers of prejudice in order to remand for an inquiry into ineffective assistance. Rather than pursue the normal course that this Court has repeatedly recognized as appropriate of filing a Section 2255 motion. Although all three of us are familiar with the case, would you nevertheless file a 28J letter with a citation to the case? Yes, Your Honor, I would be happy to. Judge Thompson, anything further of the government? I'm fine, thank you. Thank you, Your Honor. Thank you, Your Honor, for the two minutes. Frankly, I think it's irrelevant, I would submit that for the purposes of this case, it's irrelevant whether the defendant knew about the indictment or did not know about the indictment. But the record is very thin as to evidence that he did know about the indictment. But one thing is clear, is that the government knew about the indictment because the government is the one who pursued this particular case. Now, my opposing counsel gets up and says, well, we don't know what the government knew at the time or why it didn't bring the charges. Well, the government was arguing before this Court. So I don't think that that's really a fair argument to make. The fact of the matter is the government does not mention piggybacking on the grounds of an ineffective assistance of counsel claim to deny a speedy trial claim. And that is precisely what is happening. The government presumes that there was no prejudice. But in this case, you could also presume absolutely the opposite other than the items that I talked about in my direct argument. In this case, the defendant took the stand and says he wasn't even living in the project. And by the way, we also raised an ineffective assistance of counsel argument regarding withdrawal from the conspiracy, which I don't have time to go into. But counsel did say, or the defendant did say, hey, I wasn't living in the project. I withdrew from all of this. And the fact, he said he was living elsewhere. After five years, we don't know whether he could have gotten documentary evidence. We don't know whether he could have gotten these witnesses. There is really an appearance and possibility of prejudice in this case. And I would say to this court, if this court presumptively finds that a four-and-a-half-year delay is not tolerable, then I think that at a minimum, in the context of this unusual case, it should be remanded for a hearing where the defendant will have counsel to adequately represent him. Thank you. Thank you. Hold on a second. Judges, any questions? Yeah, I have one question, please. You made the argument that defendants in hate proceedings are generally proceeding pro se, which may be true. But besides that, I'm still not understanding why a collateral attack raising ineffective assistance based upon counsel's lack of raising a speedy trial issue would not give your case a chance. Well, Your Honor, I think that I answered that in the main argument. But the answer to that is that I think that the record is clear that there was a violation. I think the government here concedes that there was presumptively prejudice and that the burden rests upon the government to issue an explanation. And whether the defendant has the expertise to really articulate these issues and also articulate what the prejudice was, I mean, it is very difficult for a layman. And this is the reason, I guess, that why most habeas petitions are denied, because the defendants aren't represented by counsel. And I think that in this particular case, given the totality of the circumstances, that defendants should at least have the right to raise this issue. And induce and gather the backs, I think this is falling over, to present this issue with the assistance of counsel. Did I do it? I didn't do it. I admire your poise. Thank you, Your Honor. Okay. Thank you, counsel. We'll take a brief recess.